**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**BYRON RENDELL JONES**                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 16-7057**

**WARDEN CHRIS STINSON**                              **SECTION: "A"(1)**


### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Byron Rendell Jones, is a state prisoner incarcerated at the Madison Parish Detention Center in Tallulah, Louisiana.  On October 1, 2010, he pleaded guilty to possession of carisoprodol, possession of oxycodone, and two counts of distribution of cocaine under Louisiana law.  On that same date, he was sentenced on the two possession offenses to five years imprisonment.  Also on that same date, he additionally pleaded guilty to being a second offender and was sentenced as such on the two distribution offenses to fifteen years imprisonment with the first two years to be served without benefit of probation, parole, or suspension of sentence.  It was

ordered that the sentences run concurrently.[1]  His first appeal was dismissed as untimely filed by the Louisiana First Circuit Court of Appeal on May 6, 2011.[2]  However, after he was subsequently granted an out-of-time appeal, the Louisiana First Circuit Court of Appeal vacated his sentences and remanded the matter for resentencing.[3]

On February 10, 2014, the state district court then resentenced petitioner on each of the two possession offenses to five years imprisonment and on each of the two distribution offenses to fifteen years imprisonment with the first two years to be served without benefit of probation, parole, or suspension of sentence.  It was again ordered that all sentences run concurrently.[4]

On April 22, 2014, petitioner filed a motion to correct an illegal sentence with the state district court which was denied on April 29, 2014.[5]  His related writ applications were likewise denied by the Louisiana First Circuit Court of Appeal on July 28, 2014,[6] and by the Louisiana Supreme Court on September 11, 2015.[7]

In the interim, petitioner also sought and was granted another out-of-time appeal.[8]  On April 24, 2015, the Louisiana First Circuit Court of Appeal then affirmed his convictions, habitual

---

[1] State Rec., Vol. 1 of 2, transcript of October 1, 2010; State Rec., Vol. 1 of 2, minute entry dated October 1, 2010; State Rec., Vol. 1 of 2, Reasons for Judgment dated October 13, 2010.  On that same date, petitioner also pleaded guilty to a misdemeanor charge of possession of marijuana and was sentenced to six months in parish jail.
[2] State v. Jones, No. 2011 KA 0478 (La. App. 1st Cir. May 6, 2011); State Rec., Vol. 1 of 2.
[3] State v. Jones, No. 2013 KA 0705, 2013 WL 6858353 (La. App. 1st Cir. Dec. 27, 2013); State Rec., Vol. 1 of 2.
[4] State Rec., Vol. 1 of 2, transcript of February 10, 2014.
[5] State Rec., Vol. 1 of 2.
[6] State v. Jones, No. 2014 KW 0663 (La. App. 1st Cir. July 28, 2014): State Rec., Vol. 1 of 2.
[7] State ex rel. Jones v. State, 176 So.3d 413 (La. 2015); State Rec., Vol. 2 of 2.  The Louisiana Supreme Court also refused to consider his request for reconsideration on October 23, 2015.  State ex rel. Jones v. State, 177 So.3d 1058 (La. 2015); State Rec., Vol. 2 of 2.
[8] State Rec., Vol. 1 of 2.

offender adjudication, and sentences.[9]  The Louisiana Supreme Court denied his related writ application on September 11, 2015.[10]

On June 27, 2016, petitioner filed an application for post-conviction relief with the state district court.[11]  That application was dismissed on August 24, 2016.[12]  He did not seek supervisory review of that denial.

Petitioner thereafter filed the instant federal habeas corpus application, and he asked that the Court stay these proceedings while he exhausted his remedies in the state courts.[13]  The state opposed the entry of a stay, stating that it would instead simply waive its exhaustion defense.[14] The state further conceded that petitioner's federal application is timely, but argued that his claims should be denied on the merits.[15]

### Request for a Stay

As a preliminary matter, the undersigned recommends that petitioner's request that these proceedings be stayed and his federal application be held in abeyance be denied for the following reasons.

In Rhines v. Weber, 544 U.S. 269 (2005), the United States Supreme Court explained that, in limited circumstances, it is appropriate for a federal district court to stay habeas corpus proceedings.  In Rhines, the petitioner had filed a "mixed petition" containing both exhausted and unexhausted claims.  He wanted to stay the federal proceedings, return to state court to pursue his

---

[9] State v. Jones, No. 2014 KA 1543, 2015 WL 1893200 (La. App. 1st Cir. Apr. 24, 2015); State Rec., Vol. 1 of 2.
[10] State v. Jones, 176 So.3d 1040 (La. 2015); State Rec., Vol. 2 of 2.
[11] State Rec., Vol. 2 of 2.
[12] State Rec., Vol. 2 of 2, Order dated August 24, 2016.
[13] Rec. Docs. 6, 7 and 12.
[14] Rec. Doc. 13.
[15] Rec. Doc. 14.

unexhausted claims, and then come back to federal court for review of his perfected petition.  The

Supreme Court noted that the entry of a stay is permissible in such proceedings but noted:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.  Cf. Duncan [v. Walker, 533 U.S. 167, 180  (2001)] ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
>     For these reasons, stay and abeyance should be available only in limited circumstances.  Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.  Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.  Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Rhines, 544 U.S. at 277.

In the instant case, petitioner similarly appears to assert a mixed petition, claiming that his

guilty pleas were unknowing and involuntary on two grounds:  (1) his pleas were induced by an

illusory, unfulfillable promise and (2) the specifics of the plea agreement were not made known to

him.  The state concedes that the first ground was asserted and exhausted on direct review.

However, the state argues that the second ground, which was raised on collateral review, is

unexhausted because petitioner did not seek supervisory review after the state district court

dismissed his post-conviction application.  Petitioner apparently seeks a stay so that he can now

attempt to seek such review, thereby exhausting the second ground.[16]

---

[16] Petitioner asserts:  "Petitioner faces the prospect of his state post conviction relief being denied as not properly filed. Petitioner respectfully request[s] for this Honorable Court to stay and abey his federal habeas proceedings until state

Because the only purpose of the stay would be to allow petitioner time to attempt to exhaust his state court remedies with respect to that second ground, a stay is unnecessary since the state has affirmatively waived the exhaustion defense.  Therefore, because this Court can now review both of petitioner's grounds in light of the state's waiver, a stay would serve no purpose.  Further, for the reasons explained below, this second ground is plainly meritless in any event.  Accordingly, the request for a stay should be denied, and his claims should simply be considered and denied on the merits.

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a

---

remedies are exhaust[t]ed in state courts." Rec. Doc. 7, p. 2.  His anxiety appears to stem from the fact that he did not seek supervisory review of the dismissal of his post-conviction application in a timely manner, and, therefore, any attempt to do so now after the deadline has expired may be considered improper.

determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling*

> *on the claim being presented in federal court was so lacking in justification that*
> *there was an error well understood and comprehended in existing law beyond any*
> *possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of

state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the

law and apply the strictly deferential standards of review mandated therein.  White v. Woodall,

134 S. Ct. 1697, 1701 (2014).

### **Petitioner's Claims**

As noted, petitioner claims that his guilty pleas were unknowing and involuntary because

(1) they were induced by an illusory, unfulfillable promise and (2) the specifics of the plea

agreement were not made known to him.[17]

"It is beyond dispute that a guilty plea must be both knowing and voluntary."  Parke v.

Raley, 506 U.S. 20, 28 (1992).  However, when a habeas petitioner challenges the validity of his

guilty plea, he carries the burden of proving his plea was not in fact knowing and voluntary.  See,

e.g., Hines v. Louisiana, 102 F. Supp. 2d 690, 694 (E.D. La. 2000).  For the following reasons, the

undersigned finds that petitioner has not met his burden of proof in this case.

For a plea to be considered knowing, "the defendant must have a full understanding of

what the plea connotes and of its consequence."  United States v. Hernandez, 234 F.3d 252, 255

---

[17] See Rec. Doc. 6, p. 5.

(5th Cir. 2000) (quotation marks omitted).  Moreover, "[o]n federal habeas review, it suffices if a defendant is informed of the maximum term of imprisonment.  As long as the defendant understood the length of time he might possibly receive, he was fully aware of his plea's consequences." Hobbs v. Blackburn, 752 F.2d 1079, 1082 (5th Cir. 1985) (quotation marks and brackets omitted).

A guilty plea must also be "voluntary."  The terms "knowing" and "voluntary" "are frequently used interchangeably, although, strictly speaking, the terms embody different concepts."  Hernandez, 234 F.3d at 254 n.3.  Thus, while a "knowing" plea is one where the defendant is aware of the direct consequences of his plea, a "voluntary" plea is one not induced "by threats, misrepresentation, unfulfilled promises, or promises of an improper nature."  Id.

Here, because the transcript clearly reflects that petitioner was informed of the maximum terms of imprisonment for the various offenses,[18] his pleas are considered "knowing."  However, as noted, petitioner is arguing that his pleas were nevertheless involuntary because they were induced by an illusory, unfulfillable promise and because the specifics of the plea agreement were not made known to him.

Petitioner's contention that his pleas were induced by an illusory, unfulfillable promise was considered and rejected on direct appeal.  With respect to that contention, the Louisiana First Circuit Court of Appeal held:

> At the time the defendant pled guilty, the trial court recognized that the guilty plea resulted from prior discussions between defense counsel, the district attorney, and the court.  At that time, the trial court stated, "The substance of that plea agreement will be disclosed when I impose your sentence, and if it's not in accordance with [your] understanding, you'll be allowed to withdraw your plea of guilty at that time."  The defendant then admitted the allegations of the habitual offender bill of information and was sentenced.  After the sentence was imposed, counsel for the defendant stated, "Your Honor, I'd remind the Court that pursuant

---

[18] The transcript is included in Volume 1 of the state court record.

to pretrial discussions with both the District Attorney and the Court that the defense has 60 days to bring forward any new information that it feels would be relevant to this matter," and the trial court agreed.

The defendant now argues that his guilty pleas were not voluntary because the plea bargain agreement contained a condition that provided him with only "an illusion of possible benefit." Specifically, he contends that allowing him sixty days to bring forward any new, relevant information did not confer an actual benefit, because it did not allow him to change his convictions, habitual offender adjudications, or sentences.

A guilty plea is a conviction and, therefore, should be afforded a great measure of finality. A defendant may not withdraw a guilty plea simply because the sentence imposed is heavier than anticipated. It is not unreasonable for a trial court to deny a defendant the luxury of gambling on his sentence by allowing him to withdraw his plea when the sentence is not to his liking. However, a guilty plea is constitutionally infirm if a defendant is induced to enter the plea by a plea bargain, or what he justifiably believes to be a plea bargain, and that bargain is not kept. In such cases, the guilty plea was not given freely and knowingly. State v. Parker, 12-1550 (La.App. 1 Cir. 4/26/13), 116 So.3d 744, 750, writ denied, 13-1200 (La. 11/22/13), 126 So.3d 478.

In arguing that the condition allowing the defendant sixty days to present new, relevant information was of only illusory benefit, the defendant suggests that the extra time period could not have affected evidence of his guilt or innocence because a factual basis for the pleas was stipulated, that any evidence that may have supported excluding his predicate conviction should have been discovered before he admitted the truth of the habitual offender bill of information, and if the extension was intended to allow additional time to file a motion to reconsider sentence, that was of no possible benefit because he received the minimum habitual offender sentences. The defendant also complains that the trial court would have had to grant a timely filed motion to reconsider sentence for him to have received any benefit.

While we do not express an opinion as to whether the sixty-day period could have been used to attack either the factual basis for the defendant's guilty pleas or the evidence of his habitual offender status, it certainly could have benefited the defendant by operating as an extension of the usual thirty-day time period for filing a motion to reconsider sentence. See La.Code Crim. Pro. art. 881.1A(1). The defendant could have used that extended period of time to attempt to show that his minimum sentences were nothing more than the purposeful imposition of pain and suffering, and were grossly out of proportion to the severity of his crimes. See State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the defendant made no such effort. His failure to file a motion to reconsider sentence during the extended sixty-day period does not mean his plea bargain agreement provided only the illusion of possible benefit. He could have acted but chose not to. This argument is without merit.

10

> The defendant's guilty pleas are constitutionally sound.  He was informed of his constitutional rights under Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), acknowledged his ability to understand his pleas, approved of his counsel's performance, and was informed of the possible penalties he could receive for each of his convictions.  The record establishes that the defendant's guilty pleas were knowingly and voluntarily made.[19]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[20]

Contrary to petitioner's assertion, the promise of a sixty-day period to afford him an opportunity to bring forward new information was neither illusory nor unfulfillable.  It was not "illusory," because he did in fact gain a tangible benefit – he was afforded additional time in which he *could have* brought forth new evidence to support a downward sentencing departure under Dorthey.  Further, there is no basis for arguing that the promise was "unfulfillable," because Dorthey does in fact hold that Louisiana courts have the authority to impose a sentence below the statutory minimum in appropriate cases:

> [W]e recognize that the review of sentencing, including sentencing under R.S. 15:529.1, is a long established function of the judicial branch.  Accordingly, Louisiana's judiciary maintains the distinct responsibility of reviewing sentences imposed in criminal cases for constitutional excessiveness.  State v. Sepulvado, 367 So.2d 762 (La. 1979).  According to Sepulvado, the 1974 Louisiana Constitution, Article I, Section 2010 "'gives the courts, in the exercise of their judicial power, a basis for determining that sentences, whether fine, imprisonment or otherwise, though not cruel or unusual, are too severe as punishment for certain conduct and thus unconstitutional.  It is a basis for extending the court's control over the entire sentencing process.'"  Id. at 766, citing "The Declaration of Rights of the Louisiana Constitution of 1974", 35 La.L.Rev. 1, 63 (1974).  Thus, "[t]he imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional right against excessive punishment ..."  Id. at 767.

---

[19] State v. Jones, No. 2014 KA 1543, 2015 WL 1893200, at *1-2 (La. App. 1st Cir. Apr. 24, 2015); State Rec., Vol. 1 of 2.
[20] State v. Jones, 176 So.3d 1040 (La. 2015); State Rec., Vol. 2 of 2.

Dorthey, 623 So.2d at 1280 (footnote omitted).

Simply put, the fact that petitioner ultimately opted not to avail himself of the opportunity to present new evidence within sixty days in no way negates the existence of the negotiated benefit. Further, any suggestion that the court would have ultimately refused to consider new evidence as promised is entirely speculative, since he never made any effort to present such evidence.

For all of these reasons, it cannot be said that the state court ran afoul of clearly established federal law in rejecting petitioner's claim that his pleas were involuntary because they were induced by an illusory, unfulfillable promise.

Petitioner's second contention, i.e. that he was not made aware of the specifics of the plea agreement, fares no better.  When that contention was asserted on collateral review, the state district court refused to consider it, reasoning that it was merely a variation of the foregoing claim already fully litigated on appeal.[21]  Petitioner did not seek supervisory review of the denial of post-conviction relief.  Therefore, this second contention, to the extent that is in fact separate and distinct from the first one, is unexhausted.

Nevertheless, as noted, the state has waived the exhaustion defense, and it is clear that a federal court has the authority to deny a habeas claim on the merits regardless of whether the petitioner exhausted his state court remedies.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n.8 (E.D. La. May

---

[21] State Rec., Vol. 2 of 2, Order dated August 24, 2016.

13, 2008).  Here, petitioner's contention that he was unaware of the specifics of the plea agreement is clearly meritless and should simply be denied on that basis.

At the time of his plea, petitioner was thirty-nine years old, had gone to high school, could read and write the English language, and was not under the influence of drugs or alcohol.[22]  In his presence, the judge stated:

> [T]he Court understands … that your willingness to plead guilty results from prior discussions between the District Attorney, the Court, and your attorney.  *The substance of that plea agreement will be disclosed when I impose your sentence,* and if it's not in accordance with your understanding, you'll be allowed to withdraw your plea of guilty at that time.[23]

Also in his presence, petitioner was subsequently sentenced and his counsel, with the prosecutor's agreement, placed on the record the additional provision concerning the sixty-day period for submitting new evidence.[24]  Accordingly, the only reasonable conclusion from the record is that the sole terms of the plea agreement concerned the sentences to be imposed and the existence of the sixty-day period for submission of evidence.  Even now, petitioner does not identify any additional term of the agreement which was unstated and of which he was purportedly unaware.  Because his awareness of these terms of the agreement is apparent from the face of the record, his contention that the specifics of the plea agreement were not made known to him necessarily fails.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that petitioner's request for a stay be **DENIED**.

It is **FURTHER RECOMMENDED** that petitioner's federal application seeking habeas corpus relief be **DISMISSED WITH PREJUDICE**.

---

[22] State Rec., Vol. 1 of 2, Transcript of October 1, 2010, pp. 3-4.
[23] Id. at p. 10.
[24] Id. at pp. 15-17.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[25]

New Orleans, Louisiana, this twenty-fifth day of January, 2017.


_____
**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.